UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

WESTERN DIVISION

| | | |
|---|---|---|
| MARIA RAHE, | ) | No. CV 05-3248-PLA |
| Plaintiff, | ) | |
| v. | ) | **MEMORANDUM OPINION AND ORDER** |
| JO ANNE B. BARNHART, COMMISSIONER OF SOCIAL SECURITY ADMINISTRATION, | ) ) ) ) | |
| Defendants. | ) | |

**I.**

**PROCEEDINGS**

Plaintiff filed this action on April 29, 2005, seeking review of the Commissioner's denial of her applications for Disability Insurance Benefits and Supplemental Security Income payments. The parties filed a Consent to proceed before the undersigned Magistrate Judge on June 2, 2005. Pursuant to the Court's Order, the parties filed a Joint Stipulation on March 3, 2006, that addresses their positions concerning the disputed issues in the case. The Court has taken the Joint Stipulation under submission without oral argument.

/

/

## II.

## BACKGROUND

Plaintiff was born on December 20, 1950. [Administrative Record ("AR") at 53, 572.] She obtained a high school education in the Philippines, and attended one year of college. [AR at 84, 572-73.] She has previous work experience as an assembler (machine feeder) and an assembler of plastic hospital products. [AR at 79, 96-99.]

On February 22, 2002, plaintiff protectively filed applications for Disability Insurance Benefits and Supplemental Security Income payments, alleging that she had not worked since February 2, 2001, due to pain in her hands, neck, shoulder, hips, and back. [AR at 16, 52-55, 77-78.] After her applications were denied initially and on reconsideration, plaintiff requested a hearing before an Administrative Law Judge ("ALJ"). A hearing was held on October 21, 2003, at which plaintiff appeared with counsel and testified on her own behalf. A vocational expert and a medical expert also testified. [AR at 569-601.] On January 22, 2004, the ALJ determined that plaintiff was not disabled because she can perform light work with certain limitations. [AR at 16-23.] When the Appeals Council denied review on February 17, 2005, the ALJ's decision became the final decision of the Commissioner. [AR at 7-10.]

## III.

## STANDARD OF REVIEW

Pursuant to 42 U.S.C. § 405(g), this Court has authority to review the Commissioner's decision to deny benefits. The decision will be disturbed only if it is not supported by substantial evidence or if it is based upon the application of improper legal standards. Moncada v. Chater, 60 F.3d 521, 523 (9th Cir. 1995); Drouin v. Sullivan, 966 F.2d 1255, 1257 (9th Cir. 1992).

In this context, the term "substantial evidence" means "more than a mere scintilla but less than a preponderance -- it is such relevant evidence that a reasonable mind might accept as adequate to support the conclusion." Moncada, 60 F.3d at 523; see also Drouin, 966 F.2d at 1257. When determining whether substantial evidence exists to support the Commissioner's decision, the Court examines the administrative record as a whole, considering adverse as well

as supporting evidence. Drouin, 966 F.2d at 1257; Hammock v. Bowen, 879 F.2d 498, 501 (9th Cir. 1989). Where the evidence is susceptible to more than one rational interpretation, the Court must defer to the decision of the Commissioner. Moncada, 60 F.3d at 523; Andrews v. Shalala, 53 F.3d 1035, 1040-41 (9th Cir. 1995); Drouin, 966 F.2d at 1258.

## IV.

## THE EVALUATION OF DISABILITY

Persons are "disabled" for purposes of receiving Social Security benefits if they are unable to engage in any substantial gainful activity owing to a physical or mental impairment that is expected to result in death or which has lasted or is expected to last for a continuous period of at least twelve months. 42 U.S.C. § 423(d)(1)(A); Drouin, 966 F.2d at 1257.

**A.    THE FIVE-STEP EVALUATION PROCESS**

The Commissioner (or ALJ) follows a five-step sequential evaluation process in assessing whether a claimant is disabled. 20 C.F.R. §§ 404.1520, 416.920; Lester v. Chater, 81 F.3d 821, 828 n.5 (9th Cir. 1995, as amended April 9, 1996). In the first step, the Commissioner must determine whether the claimant is currently engaged in substantial gainful activity; if so, the claimant is not disabled and the claim is denied. Id. If the claimant is not currently engaged in substantial gainful activity, the second step requires the Commissioner to determine whether the claimant has a "severe" impairment or combination of impairments significantly limiting her ability to do basic work activities; if not, a finding of nondisability is made and the claim is denied. Id. If the claimant has a "severe" impairment or combination of impairments, the third step requires the Commissioner to determine whether the impairment or combination of impairments meets or equals an impairment in the Listing of Impairments ("Listing") set forth at 20 C.F.R., Part 404, Subpart P, Appendix 1; if so, disability is conclusively presumed and benefits are awarded. Id. If the claimant's impairment or combination of impairments does not meet or equal an impairment in the Listing, the fourth step requires the Commissioner to determine whether the claimant has sufficient "residual functional capacity" to perform her past work; if so, the claimant is not disabled

and the claim is denied. Id. The claimant has the burden of proving that she is unable to perform past relevant work. Drouin, 966 F.2d at 1257. If the claimant meets this burden, a prima facie case of disability is established. The Commissioner then bears the burden of establishing that the claimant is not disabled, because she can perform other substantial gainful work available in the national economy. The determination of this issue comprises the fifth and final step in the sequential analysis. 20 C.F.R. §§ 404.1520, 416.920; Lester, 81 F.3d at 828 n.5; Drouin, 966 F.2d at 1257.

**B.    THE ALJ'S APPLICATION OF THE FIVE-STEP PROCESS**

In this case, at step one, the ALJ concluded that plaintiff has not engaged in any substantial work activity since the alleged onset of her disability. [AR at 17, 22.] At step two, the ALJ concluded that plaintiff has the following impairments that in combination are "severe": mild bilateral carpal tunnel syndrome; mild degenerative disc disease of the cervical spine; episodes of one-sided paresthesia upper and lower extremities; history of migraine headaches and diagnosed vertigo; possible transient ischemic attack; hypertension; and complaints of knee pain. [AR at 18.] At step three, the ALJ found that plaintiff's impairments do not meet or equal the requirements of any of the impairments in the Listings. [AR 18, 23.] The ALJ further determined that plaintiff retains the residual functional capacity[1] to perform work at the light exertional level, with certain limitations.[2] [AR at 18, 23.] At step four, the ALJ determined that plaintiff is able to

---

[1]    Residual functional capacity ("RFC") is what a claimant can still do despite existing exertional and nonexertional limitations. Cooper v. Sullivan, 880 F.2d 1152, 1155 n. 5 (9th Cir. 1989).

[2]    Light work is defined as work that involves lifting no more than 20 pounds at a time with frequent lifting or carrying of objects weighing up to 10 pounds. 20 C.F.R. §§ 404.1567(b), 416.967(b). The ALJ also determined that plaintiff has the capacity for frequent gross and fine manipulation and for reaching in all directions, and that she can occasionally climb stairs, bend, balance, stoop, kneel, crouch or crawl. The ALJ precluded plaintiff from climbing ladders, ropes, or scaffolds, but imposed no more than mild limitations in any area of mental functioning. [AR at 18, 23.]

perform her past relevant work. [AR at 22-23.] Accordingly, the ALJ found plaintiff not disabled. [Id.]

## V.

## **THE ALJ'S DECISION**

Plaintiff contends that the ALJ failed to (1) properly evaluate the impairment of vertigo and to develop the record; and (2) properly evaluate her testimony. Joint Stipulation ("Joint Stip.") at 5-8, 11-15, 17-18. For the reasons explained below, the Court agrees that the ALJ erred by not properly developing the record with respect to plaintiff's alleged vertigo, and remands the matter for further proceedings.

**THE ALJ ERRED IN NOT FULFILLING THE DUTY TO FURTHER DEVELOP THE RECORD.**

In her decision, the ALJ concluded that plaintiff has the following medically determinable impairments that in combination are "severe" for Social Security purposes: mild bilateral carpal tunnel syndrome; mild degenerative disc disease of the cervical spine; episodes of one-sided paresthesia upper and lower extremities; history of migraine headaches and diagnosed vertigo; possible transient ischemic attack; hypertension; and complaints of knee pain. [AR at 18.] In evaluating plaintiff's vertigo,[3] the ALJ noted that "[c]linical, laboratory and imaging studies have been essentially normal and fail to explain subjective complaints of dizziness. A January 2002 otolaryngologist's report describes the dizziness as only slight in degree, with medication ..."[4] [AR at 19.]

According to plaintiff, the ALJ erred by failing to take into account the evidence showing that the severity of her vertigo increased after January 2002. Joint Stip. at 6. Plaintiff further contends that, based on the medical expert's testimony that a neurological examination would be

---

[3] According to the medical expert ("ME"), vertigo is a generic description for subjective dizziness. [AR at 597.]

[4] The ALJ likewise discredited plaintiff's subjective complaints of dizziness on the basis that "the medical reports describe the ... dizziness as mild, and treated with medication." [AR at 21.]

5

appropriate to assess the allegations of dizziness, the ALJ failed to adequately develop the record by obtaining such an exam. Id. at 7.

In social security cases, although the claimant bears the burden of proving disability, the ALJ has an independent "'special duty to fully and fairly develop the record and to assure that the claimant's interests are considered.'" Smolen v. Chater, 80 F.3d 1273, 1288 (9th Cir. 1996) (quoting Brown v. Heckler, 713 F.2d 441, 443 (9th Cir. 1983)). This duty is triggered and "[f]urther examination of the claimant may be warranted, for example, if the evidence at hand is inconsistent, ambiguous, or insufficient to make a disability determination." Graham v. Massanari, 2002 WL 144202 at *6 (N.D. Cal. Jan. 28, 2002) (citing 20 C.F.R. §§ 404.1519a(b)(4), 416.919a(b)(4)).

The ALJ's responsibility derives in part from the basic premise that disability hearings are not adversarial in nature. See Sims v. Apfel, 530 U.S. 103, 110-111, 120 S.Ct. 2080, 147 L.Ed.2d 80 (2000). It is also based on the regulatory directive that, in an administrative hearing, the ALJ "looks fully into the issues." 20 C.F.R. §§ 404.944, 416.1444; see also Pearson v. Bowen, 866 F.2d 809, 812 (5th Cir. 1989) (recognizing ALJ's "duty of 'full inquiry' under 20 C.F.R. § 416.1444").

As part of this duty, the ALJ has an obligation to take reasonable steps to ensure that issues and questions raised by medical evidence, particularly evidence from treating physicians, are addressed so that the disability determination is fairly made on a sufficient record of information, both favorable and unfavorable to the claimant. See Tidwell v. Apfel, 161 F.3d 599, 602 (9th Cir. 1999); see also 20 C.F.R. §§ 404.1527(c)(3), 416.927(c)(3)(providing steps to obtain additional evidence where medical evidence is insufficient to determine whether claimant is disabled); 20 C.F.R. §§ 404.1512(e), 416.912(e) (providing measures for obtaining additional information from treating doctors). Where it is necessary to enable the ALJ to resolve an issue of disability, the duty to develop the record may require consulting a medical expert or ordering a consultative examination. See 20 C.F.R. §§ 404.1519a, 416.919a; Armstrong v. Commissioner, 160 F.3d 587, 590 (9th Cir. 1998) (where there were diagnoses of mental disorders prior to the date of disability found by the ALJ, and evidence of those disorders even prior to the diagnoses,

the ALJ was required to call a medical expert to assist in determining when the plaintiff's impairments became disabling); Pearson, 866 F.2d at 812-13.

On the other hand, the ALJ is not obligated to undertake the independent exploration of every conceivable condition or impairment a claimant might suffer. An ALJ does not fail in his duty to develop the record by not seeking evidence or ordering further examination or consultation regarding a physical or mental impairment if no medical evidence indicates that such an impairment exists. See Pearson, 866 F.2d at 812 (requiring that claimant must "raise a suspicion concerning such an impairment" before ALJ is required to discharge duty of full inquiry by ordering a consultative examination).

Here, the ALJ concluded that plaintiff has a history of diagnosed vertigo. [AR at 18.] The record shows that plaintiff has sought treatment for dizziness since 2001. [See AR at 165-69, 296, 322.] According to both the treating notes and plaintiff's testimony, her dizziness has, at times, fluctuated from a mild and tolerable condition to more severe. [See AR at 296, 321, 436, 468, 554, 559-60, 585-87.] In February 2004, plaintiff was examined by a neurologist who observed that plaintiff was experiencing disequilibrium and "possibly some vertigo" as well as Meniere's disease.[5] [AR at 540.] Plaintiff reportedly obtained some relief from the medication Meclizine. [AR at 541.] According to the neurologist, a carotid ultrasound test was warranted, and plaintiff was referred for an audiogram. [Id.] When plaintiff's hearing was tested later that month, the results showed that the "contralateral acoustic reflexes were elevated or absent" in her left ear. [AR at 548.] It is not apparent from the present record whether this finding has any relation to her vertigo. The evidence also shows that plaintiff has consistently been prescribed medication for her dizziness. [See, e.g., AR at 468, 540 (noting plaintiff's use of Meclizine).] There is no indication that she has been noncompliant with her treatment regimen.

At the hearing, plaintiff testified that she experiences dizziness on a daily basis. [AR at 585.] She alleged that it has caused her to fall down "[a] lot of times" and that she uses a walker,

---

[5] This evidence was submitted by plaintiff to the Appeals Council on June 14, 2004, after the ALJ's decision was issued. [See AR at 504.]

7

in part, for balance. [AR at 587.] Indeed, the record shows that when plaintiff was discharged after a stay at Riverside Community Hospital in March 2003, the related treating note states that plaintiff is to "use [a] front-wheeled walker for safety." [AR at 449.]

When questioned by plaintiff's attorney at the hearing, the medical expert opined that, with respect to the etiology of plaintiff's claim of dizziness, "being evaluated by a neurologist would be appropriate." [AR at 597.] The ME further testified that "[s]ometimes a precise cause [for dizziness] is not known," but nevertheless, taking into account "the unidentified left-sided and then right-sided numbness and weakness, [the dizziness does not] appear to have an organic basis." [AR at 594-95.] Although the ME made note of plaintiff's negative MRI, he commented that he did not find "an actual neurological evaluation" in the record. [AR at 598.] In the opinion, the ALJ fairly summarized the ME's testimony, but made no mention of the statement that a neurological evaluation would be appropriate to evaluate plaintiff's allegations of dizziness. [AR at 21.]

Taking into account plaintiff's lengthy treatment history relating to her complaints of dizziness, as well as the medical expert's testimony regarding the suitability of a neurological examination, the Court concludes that the ALJ erred by not fulfilling the duty to develop the record by ordering the examination. Kang v. Bowen, 1989 WL 281938, at *3 (N.D.Cal. May 16, 1989) (reversible error for ALJ not to order a consultative examination "when such an evaluation is necessary for the ALJ to make an informed decision") (citing Dozier v. Heckler, 754 F.2d 274, 276 (8th Cir.1985)). Because the ALJ discredited plaintiff's allegations of dizziness due to a lack of supporting objective evidence, the Court is persuaded that the ALJ should have had the benefit of a complete neurological examination before making that determination to assure that plaintiff's interests were properly considered. The examination is necessary for the ALJ to make a sufficiently informed decision as to the extent of the disabling impact of the dizziness. Such an analysis is particularly warranted in light of the vocational expert's testimony that a person who experiences unscheduled cessation of activity as a result of, among other things, vertigo and dizziness, could not maintain or perform plaintiff's past work. [AR at 598.]

/

/

Remand is therefore in order to allow for plaintiff to take part in a consultative neurological examination.[6] As the results of this examination may impact other portions of the disability analysis, such as the credibility determination, plaintiff's remaining claims will not be addressed herein.

## VI.

## REMAND IS APPROPRIATE

As a general rule, remand is warranted where additional administrative proceedings could remedy defects in the Commissioner's decision. See Harman v. Apfel, 211 F. 3d 1172, 1179 (9th Cir.), cert. denied, 531 U.S. 1038 (2000); Kail v. Heckler, 722 F.2d 1496, 1497 (9th Cir. 1984). In this case, remand is appropriate for plaintiff to undergo a complete neurological examination. The ALJ is instructed to take whatever further action is deemed appropriate and consistent with this decision.

Accordingly, **IT IS HEREBY ORDERED** that: (1) plaintiff's request for remand is **granted**; (2) the decision of the Commissioner is **reversed**; and (3) this action is **remanded** to defendant for further proceedings consistent with this Memorandum Opinion.

**IT IS FURTHER ORDERED** that the Clerk of the Court serve copies of this Order and the Judgment herein on all parties or their counsel.

DATED: April 25, 2006

/S/
PAUL L. ABRAMS
UNITED STATES MAGISTRATE JUDGE

---

[6] The record is also replete with references to plaintiff's complaints of and treatment for one-sided body numbness -- a condition that the ALJ apparently found to be medically determinable, but discredited for lack of supporting objective evidence. [See AR at 18 (noting plaintiff suffers from "episodes of one-sided paresthesia upper and lower extremities"); AR at 22 (discrediting plaintiff's allegations regarding transient ischemic attack symptoms on the basis that "physicians failed to find any significant neurologic pathology on examination, and MRI scanning of the claimant's brain has been normal").] Due to the neurological nature of these particular subjective allegations, the consultative examination should explore the etiology of plaintiff's complaints of one-sided body numbness as well.